THE PEOPLE OF NORTH CAROLINA on relation of THE ATTOR-
NEY GENERAL v. JAMES HEATON.

*Judge of Probate—Forfeiture of Office.*

1. A Judge of Probate is not subject to impeachment under Battle's Re-
visal, ch. 58, § 16.

2. By the express terms of the statute (Bat. Rev. ch. 90, §§ 15, 16,) a single
failure on the part of a Clerk of a Superior Court and Probate Judge,
to keep his office open on Monday from 9 a. m. to 4 p. m. for the trans-
action of probate business (unless such failure is caused by sickness) is
a distinct and complete cause of forfeiture of his office.

3. Under C. C. P. § 366, an action against a Judge of Probate to vacate
his office is properly brought by the Attorney General in the name of
the people of the State.

(*Patterson* v. *Hubbs*, 65 N. C. 119; *State* v. *McEntire*, 3 Ire. 171; *Lon-
don* v. *Headen*, 76 N. C 72, cited and approved.)

CIVIL ACTION, in the nature of a Quo Warranto, tried at
Spring Term, 1877, of NEW HANOVER Superior Court, before
*Seymour, J.*

The jury found a special verdict as follows: "That said
James Heaton, Clerk of the Superior Court and Judge of
Probate for the County of New Hanover, was, on Monday
the 12th of March, 1877, as specified in the complaint in this
action, absent from his office in the City of Wilmington and
was not present therein at any time between the hours of 9
a. m. and 4 p. m. of that day, the same being the regular of-
fice of said Clerk and Probate Judge ; that his failure to at-
tend at said office was not caused by sickness; that during
said hours, said James Heaton was present in a different
part of the City at an election there held; that during said
hours the doors of his said office were open and one William
H. Gerken, his Deputy, was present therein, excepting one
hour from about 1 to 2 p. m ; that instructions were left at
said office with said Deputy to the effect following, to-wit:

that if any person desired Mr. Heaton to attend to any probate business, he, the deputy, should send for him, or if such person preferred, he, the person desiring to transact business, should be directed to the place where said Heaton, the Clerk, &c. then was; that said Heaton made arrangements for the use of a room during the day for the transaction of probate business, and that various persons who had gone to his office were directed to said room, and that said Heaton there took the acknowledgment of divers deeds, and transacted such probate business as was brought before him; that such persons were informed, that if they desired it, said Heaton should be sent for, but preferred them to go to the place where he was. Whether the said Heaton has forfeited his office as averred in the plaintiff's complaint, the jury are ignorant and pray the advice of the Court, &c.

Upon this special verdict His Honor gave judgment for the defendant and the plaintiff appealed.

*Mr. D. L. Russell* for plaintiff.
*Messrs. A. T. & J. London,* for defendant.

BYNUM, J. This action is brought under the following clauses of section 366, of the Code of Civil Procedure: " An action may be brought by the Attorney General in the name of the people of this State upon his own information, or upon the complaint of any private party against the parties offending in the following cases : * * * (2 . When any public officer, civil or military, shall have done, or suffered an act which by the provisions of law shall make a forfeiture of his office."

The defendant is the Clerk of the Superior Court of New Hanover County, and the particular duty for the non-performance for which this action is brought, is enjoined in the Acts of 1871–'72, ch. 136, §§ 1, 2, (Bat. Rev. ch. 90, §§ 15, 16,) as follows: 15. "The Clerks of the Superior Courts of this

State shall open their offices every Monday from 9 a. m. to 4 p. m. for the transaction of probate business, and each succeeding day till such matter is disposed of. 16. Any Clerk of the Superior Court failing to comply with the last section (unless such failure is caused by sickness) shall forfeit his office."

The complaint charges that on the 12th of March, 1877, being Monday, the defendant did fail to keep open his said office during the prescribed hours for the transaction of probate business, and that the failure was not caused by sickness.

There is another count in the complaint alleging the repeated and habitual failure so to open his office on Mondays for twelve months or more.

The Court below refused to hear evidence upon this second count, and ordered it to be stricken out because of its vagueness, the plaintiff not offering to amend the complaint. We incline to concur with His Honor, but as we are with the plaintiff on the first cause of action set forth, it is unnecessary to decide this point. For the same reason we do not decide the objection of the plaintiff, that the answer was without verification although the complaint was verified.

The defendant in his answer and in this Court objects, first, to the form of the action, and second, to the jurisdiction of the Court.

1. To the form of the action. Because, he says, being for a public offence highly penal, it is a criminal charge, which by Art. 1, § 12, of the Constitution, can only be instituted by indictment, presentment or impeachment. The answer to this is, that the action is not brought to punish the defendant criminally, but to vacate an office which he has forfeited by a failure to discharge its duties. He is still liable to indictment and punishment for the same or similar offence, both of mis-feasance and non-feasance.

2. The jurisdiction. The defendant insists that a Judge

of Probate is a judicial officer, and under the Constitution can be deprived of his office only by impeachment. The answer is, that the Constitution no where declares what persons are liable to impeachment. On the contrary it does provide, Art. 4, §§ 31, 32, that for certain causes therein named, both the Judges of all the Courts, and the Clerks of the Superior Courts, may be in other ways removed from office. We are to look not to the Constitution, but to the Statute law, to ascertain what persons are liable to impeachment.

The first Act under the new Constitution, was passed by the Legislature of 1868-'69, Bat. Rev. ch. 58, the 16th section of which enacts, that "Every officer in this State shall be liable to impeachment for, (1) corruption or other misconduct in his official capacity, &c.," enumerating many other causes of impeachment.

This Act literally construed would include not only Judges of Probate, but Justices of the Peace, Sheriffs and Constables. This was certainly not the intention of the Act. Although there is nothing in the Act explanatory of § 16 above recited, it probably has reference to "all officers in this State," holding "State" offices in contradistinction to "County" and local offices. But however that may be, we are relieved of all difficulty in our case by the express provisions of the Act under which this action is prosecuted. It specifies the officer and the offence, and having been enacted subsequent to the Act of 1868-'69, operates as a repeal of any conflicting provisions of that Act.

The action is properly brought as provided in § 366, C. C. P. *Patterson* v. *Hubbs*, 65 N. C. 119. The main question is, does a single failure of the Judge of Probate to keep open his office on Monday, as prescribed, forfeit his office? The Act is precise as well as peremptory; "they shall open their offices *every* Monday from 9 a. m. to 4 p. m., for the transaction of probate business;" "any Clerk, &c., *failing* to com-

ply, &c., *shall* forfeit his office." By the express terms of the Act every failure is a distinct and complete cause of forfeiture ; and such we believe is the intent of the Act.

The office of Judge of Probate was created by the Constitution of 1868, and the officer is clothed with a very extensive and responsible jurisdiction over the business affairs of society. He has jurisdiction to take proof of deeds, official bonds and wills ; to grant and revoke letters testamentary and of administration ; to appoint and remove guardians of lunatics and infants ; to bind out apprentices and cancel the indentures ; to audit the accounts of executors, administrators and guardians ; and to exercise jurisdiction in many other matters prescribed by law.  Bat. Rev. ch. 90.

The office of this important officer is a place of constant resort by the citizens of the County, and frequently of more distant parts of the State, in the discharge of business requiring the action and often the speedy and prompt action of that officer.  In many Counties the Court House is distant and not very accessible to those having official business with the Judge of Probate.  After some years experience, the frequent remissness of these officers in their attendance at their offices became a serious evil and a public detriment in an agricultural population, and particularly to those living at a distance, who oftentimes made long journeys to reach the County seat, and failing to find the Clerk, returned home "with their labor for their pains."  To remedy this public inconvenience and loss, the Act in question was passed in 1871–'72.

The services of every one who seeks or accepts a public office are due and pledged to the public to the extent and in the manner prescribed by law.  If the public exacts a strict performance of these duties, the officer has no right to complain.  It is the contract.  The many are injured by its breach, while one only can be benefitted.

The Act in question is not unreasonable, in this, that the

penalty of the forfeiture of office is annexed to the delinquency of the officer on one particular day of the week only, relieving him from the penalty for his neglect during all the other days of the week. The reasonable purpose of the law is, that there shall be at least one known and designated day in the week, when the public having probate business with the Clerk, may know they will find the proper officer at his post attending to his duties

It is unnecessary to discuss whether in reason and even in common humanity there should not be other exceptions besides sickness which would relieve the defendant of the penalty. We might suggest many examples which ought to be added to the exception of sickness, and which the Courts might accept as excuses falling within the same principle with sickness; as for instance, a fatal contagion, fire, sickness and death of wife or child, &c. But no such question arises here, for no such excuse is offered. On the contrary the defendant was voluntarily absent during the office hours of Monday, the 12th of March, in another part of the City in attendance upon some public election. He had no business there except it might be as a voter, and he had ample time both before and after his prescribed office hours in which to cast his vote. He did not go to the polls, vote and return to his office. He did not intend to return that day, for he procured a room at the election precinct and left directions at his office in the Court House (the place fixed by law,) where he might be found or sent for by those having probate business with him. So he might have gone hunting or fishing, leaving behind him similar directions.

The excuse offered is wholly inadmissible and is a plain breach, both of the letter and spirit of the law.

The deputy of the defendant, who himself did not keep the office open during the day as prescribed by law, was not competent to discharge the duties of the defendant as Judge of Probate, so that the defendant was not actually or poten-

tially present that day in his office in the Court House, the place designated by law and used by him as the office of the Judge of Probate.

It is insisted upon in behalf of the defendant, that a single act of omission does not bring his case within the operation of the Act making the offence a forfeiture of office. The contrary is the only reasonable construction of the statute. "He shall open his office every Monday," and "a failure to comply with the last section, shall forfeit his office," is the language of the Act. If a single act is insufficient, how many are necessary to work a forfeiture, and by whom and how is the number of acts necessary, to be ascertained.

The rule in civil is the same as in criminal cases, and in the latter it is this; "Whenever the law, statutory or common, casts on one a duty of a public nature, *any* neglect of the duty, or *act* done in violation of it, is indictable." 1 Bish. Cr. Law, § 557. Also see *State* v. *McEntire*, 3 Ire 171; *London* v. *Headen*, 76 N. C. 72.

A single act of neglect or failure is as much a violation of the law, as twenty. See 1 Bish. Cr. Law, § 913.

There is error. Judgment reversed, and judgment for the plaintiff is rendered here upon the special verdict.

PER CURIAM.                    Judgment reversed.