A. J. DUKE v. JOSEPH H. WILLIAMS and others.

*Confederate Currency — Evidence.*

1. Evidence as to the currency intended by the parties to a note executed in January, 1863, for land, that a proposition was made to sell the same for $1,000 in confederate money which was declined, the party (declining) at the time expressing the opinion that it was worth $600 in good money, is competent to confirm the statutory presumption arising upon the face of the note as to the kind of money in which it was solvable.

2. Where no particular species of money is designated in such note, and sundry credits are endorsed thereon (paid in national currency in 1867–1870), the debt and the partial payments should alike be reduced to a specie basis in order to an adjustment of the claim.

(*Brown* v. *Foust*, 64 N. C., 672 ; *Hall* v. *Craig*, 65 N. C., 51 ; *Wimbish* v. *Miller*, 72 N. C., 523 ; *Walkup* v. *Houston*, 65 N. C., 551, cited and approved )

CIVIL ACTION tried at Fall Term, 1879, of GATES Superior Court, before *Gudger, J.*

There was judgment for plaintiff and the defendants appealed.

*Messrs. Gilliam & Gatling,* for plaintiff.
*Messrs. Pruden & Shaw,* for defendants.

SMITH, C. J. The plaintiff on January 1st, 1863, purchased from John L Williams the land mentioned in his

complaint at the price of twelve hundred dollars, of which sum he paid $328 in confederate currency and executed his note under seal for $872 the residue and received title. John L. Williams died soon after intestate and the defendant Henry C. Williams became his administrator.

On the 6th day of October, 1866, the plaintiff conveyed the land to Henry C. in trust to secure the said note, describing it, and with a power of sale in the trustee. Sundry payments were thereafter made in national currency and endorsed on the note as follows: On January 1st, 1867, $200; January 1st, 1869, $50; and on January 1st, 1870, $150.

In December, 1876, after advertisement the land was sold by the trustee, according to the provisions of his deed and bid off at $705 by the defendant Hardy C. Williams, who, as receiver for the intestate's infant children, then held the note, and transferred his bid to the defendant Joseph H. Williams, also a son of the intestate, who, after deducting his own share, paid over the remaining proceeds of sale in cash to the trustee and took his deed conveying the title. The material facts brought in controversy by the pleadings were submitted in a series of issues to the jury whose finding in substance is:

1. The note executed by the plaintiff is solvable in confederate currency.

2. Neither Hardy C., who bid off the land, nor Joseph H., his assignee, was induced to buy the land by the conduct of the plaintiff, and both had notice of the plaintiff's claims when it was sold.

3. The plaintiff after the trustee's sale did rent the land from Joseph H. to whom it had been conveyed.

During the trial of the issue as to the currency intended by the parties in the execution of the plaintiff's note and to sustain a witness who had testified that he made the original contract of purchase with the intestate for confed-

erate money and allowed the plaintiff to assume his place in the contract, another·witness was allowed, after objection, to prove that he proposed to sell the land to his father for $1000 payable in confederate money and the latter declined to give his bond for that sum, but at the same time expressed an opinion that the property was then worth $600 in good money. This is the first exception. We think the evidence was competent to confirm the statutory presumption arising upon the face of the note and to repel the evidence offered in rebuttal.

The court was asked to give the following instructions to the jury :

1. " When a sale is publicly made and a third person is present who knows his title, fails to make it known, he shall not afterwards be permitted to set up his title against the purchaser at such sale for value and without notice."

2. " The purpose to deceive is presumed when one's conduct is such as to mislead a reasonable man, on the principle that between two innocent persons the loss must fall on him who causes it." These may or may not be correct abstract propositions of law, but the court properly declined to give them to the jury for the reasons set out in the record, that the issues before the jury involve facts only to which the law would be applied if necessary on the finding, and which were entirely out of the controversy and inapplicable by the finding that there was no such conduct on the part of the plaintiff as the instructions pre-supposed and the purchasers were fully cognizant of the plaintiff's claims.

The court adjudges that the endorsed payments extinguished the indebtedness due on the plaintiff's note when reduced according to the legislative scale to its equivalent in gold before the sale took place, and the trusts being thus discharged the trustee had no authority to sell and his deed was inoperative to pass the title, and that the plaintiff recover possession and damages as rents for the time the

possession was withheld. The correctness of this ruling is presented by the defendant's appeal.

When partial payments, though made in depreciated currency, are endorsed for their nominal amount on a bond executed when there was no such currency and which is payable in good money, their effect is to extinguish the debt *pro tanto* because as was remarked by Settle, J., "they have been accepted by the plaintiffs and amount to a discharge to the extent of their nominal values." *Brown* v. *Foust,* 64 N. C., 672; *Hall* v. *Craig,* 65 N. C., 51; *Wimbish* v. *Miller,* 72 N. C., 523. If the bond be drawn payable in specie and the endorsed payments are in currency, they operate in reducing the indebtedness only to the value of such credits reduced to coin at their respective dates. This also rests upon the presumed intent of the parties. *Walkup* v. *Houston,* 65 N. C., 501.

First. If the reverse of the rule declared in the case first cited be correct and the rule thus made universal, that where no particular species of money is designated in the body of the note to be paid, and the same is true of the endorsed credits, it is to be assumed that the latter were intended to extinguish an equal amount of the debt due without reference to the kind and value of the money thus applied, or of the indebtedness to which it is applied. In this aspect of the matter the payments are but little in excess of the accruing interest due at the time of the sale, and if the residue of the principal be then scaled, the proceeds of the sale of the land will discharge the debt and leave a considerable sum to be paid over to the plaintiff.

Second. If, however, the confederate currency intended in the contract and the national currency used in the partial payments be alike reduced to their equivalent in gold at the respective dates of each, and an estimate be made upon the basis of one currency for all, the result may be (we cannot say how it is, since we do not know the specie

value of national currency when the credits were put on the note) that there was still a subsisting indebtedness in December, 1876, when the trustee made his sale.

Third. If the debt is reduced to specie and the payments are admitted at their nominal amount, the conclusions of His Honor are correct, that no indebtedness existed when the land was sold and the trustee ought not to have sold.

Of these three modes of adjustment, we think that most equitable and in consonance with the past adjudications of the court which proposes to reduce to a specie basis alike the debt itself and the successive payments thereof, as suggested in the second method of computation. As the judgment must have been rendered upon the basis of the third method of settlement, and this is in our opinion erroneous, it must be reversed, and the cause remanded to be proceeded with according to this opinion; and if it shall turn out that the sale was warranted, so that if the specific relief asked cannot be obtained in the present form of the action, application may be made for such amendment as will enable the court to grant such relief as the plaintiff may be entitled to.

Error.                                           Reversed.