*JAMES W. GRANT, Adm'r, v. JOSEPH J. BELL.

*Executors and Administrators—Reference.*

1. An executor who pays his personal debt out of assets of the estate commits a *devastavit*, and his creditor who knowingly receives the money thus mis-

---

*SMITH, C. J., did not sit on the hearing of this case.

applied is guilty of collusion and liable to an action for the amount, whether he believed the executor to be solvent or not. (The decision on former hearing, 87 N. C., 34, affirmed).

2. Therefore, where the executor obtains judgment against a defendant in favor of the testator's estate, and the defendant pays a part thereof in cash and a part in notes due from the executor personally; *Held*, that the latter did not operate a discharge of any portion of the judgment—the same being the property of the estate and not of the executor personally; and hence, the defendant in this case is liable to the payment of the balance due upon the judgment, but is entitled to the benefit of what may be due the executor under his testator's will.

3. Where the report of a referee is imperfect or unsatisfactory, the court will disregard the exceptions thereto and order a reference with instructions as to the manner of stating the account.

4. The points in reference to suretyship, notice and statute of limitations, argued by counsel, were held untenable and not applicable to the facts of the case.

(*Grant* v. *Bell*, 87 N. C., 34, cited and approved).

CIVIL ACTION for account and settlement tried at Spring Term, 1880, of NORTHAMPTON Superior Court, before *Gudger, J.*

This case is reported in 87 N. C., 34, and under a reference had in obedience to the decision there rendered, the referee (Boone) submitted his report to this court, and the cause is now heard upon exceptions thereto.

*Messrs. R. B. Peebles* and *T. N. Hill*, for plaintiff.
*Messrs. Mullen & Moore, Day & Zollicoffer* and *J. B. Batchelor*, for defendant.

MERRIMON, J. It appears that one Benjamin F. Lockhart duly qualified in 1863 as the executor of the last will and testament of William T. Bell, deceased; that as such executor he brought suit in the then court of equity of Northampton county in 1864 against the defendant for an account and settlement of sundry matters in dispute between them; that on the 25th day of November, 1868, they compromised their matters in litigation, and a decree by consent was entered in the superior court

of that county in favor of the said executor and against the
defendant for $12,077:34. The defendant contended in this
action that he paid and discharged this decree on the day it was
entered, and took from the executor a proper acquittance in that
respect.

Afterwards, the letters testamentary of the executor were
revoked by the court of probate in that county, and letters of
administration *de bonis non cum testamento annexo* upon the
estate of the said William T. Bell, deceased, were granted to the
plaintiff on the 19th day of May, 1876, and on the 10th of
July, 1876, he brought this action against the defendant.

In his complaint the plaintiff alleged, among other things,
that the decree above mentioned was collusive and fraudulent as
between the said executor and the defendant, and that the
defendant did not in fact pay but a small sum of money on
account of said decree, but undertook and pretended to pay the
balance thereof in personal debts of the executor due to the
defendant. The defendant denied these allegations.

The action was tried in the superior court, there was judg-
ment for the defendant, and the plaintiff appealed to this court.
The appeal was heard here at October term, 1882, and a refer-
ence was ordered and the case retained for further action. 87
N. C., 34.

The said Benjamin F. Lockhart, executor, was a beneficiary
under the will of which he was executor. He died on the 7th
day of February, 1877.

This court established by its judgment in this case, rendered
at October term, 1882, the decree in the superior court granted
on the 25th of November, 1868, in favor of B. F. Lockhart,
executor, against the defendant for $12,077.34. It held, also,
that the defendant did not discharge so much of that decree as
he undertook to do by surrendering to the executor the bonds
the defendant held against him for his own personal debt.
Referring to this aspect of the case, Mr. Justice RUFFIN, in
delivering the opinion of the court, said: "Nor can it materially

alter the case that the executor in this instance was a legatee, as well. At most, he was only a legatee for life with remainder to his children, if any, and if not, then to his brother's children. But above all this, the defendant had notice that the executor was applying the assets out of the ordinary course of administration, and he participated therein, and must be taken to have dealt at his peril in this particular also, and he cannot be permitted to retain the fruits of his collusion so long as a single debt of the testator remains unpaid, or a legatee of any description remains unsatisfied."

"Of course he should be allowed to have the interest of Lockhart in the estate, whatever that may be. But this could only be to stop interest on the amount thus appropriated during his life; and that, provided it may not be needed to pay creditors who have the first and highest equity."

"Our conclusion, therefore, is that the settlement made in 1868, between the defendant and the acting executor, cannot be disturbed, its *bona fides* being fully established by the verdict of the jury. But that the plaintiff is entitled to judgment in this court for so much of the sum then ascertained to be due, as is unpaid, including such amounts as were attempted to be paid in the private debts of the executor, whether endorsed or not, together with interest from the death of the executor, unless otherwise directed after a reference, which, if the parties so desire, may be had to the clerk of this court to ascertain the sum still due, and to enquire touching the debts of the testator."

Thus two things were definitely settled: 1st. That the plaintiff is entitled to judgment in this court for so much of the sum of money specified in the decree mentioned, including interest thereon, as has not been paid by the defendant, excluding and disallowing such sum as he undertook to pay by the surrender to the executor, Lockhart, of the notes he held against him for his own personal debt. 2d. That the defendant should have the benefit of any interest the executor had under the will of his testator.

36

The court ordered a reference to ascertain the balance so due to the plaintiff. The referee has made his report at the present term, to which both the plaintiff and defendant have filed numerous exceptions and these have been elaborately argued by counsel of both parties.

Upon an examination of the report, we find it confused and unsatisfactory. It fails to ascertain definite results, and the account is not at all formally stated as required by the order of reference. Important facts appear from it, however, with sufficient certainty to enable us to decide the principal questions raised by the exceptions to it, and to make an order recommitting it with more definite instructions as to what the account shall embrace and how it shall be stated.

The report shows that the defendant paid to the executor, Lockhart, on account of the decree for $12,077.34 on the day it was entered, $4,489.16 in cash, leaving a balance of $7,588.18, which latter sum, on the same day, he undertook to discharge by delivering to the executor a bond he held against him for his own personal debt, amounting to $1,997.29; another bond that he held against the executor and three other parties, the balance due on which amounted to $4,489.16; and an arrangement by which the executor received credit for $1,101.73 on a bond that Nicholas M. Long held against the executor, with the defendant as surety thereto, the defendant, through his counsel, giving Long credit for the same sum on a bond he held against him.

The bonds thus surrendered to Lockhart, the executor, and his arrangement with Long for his personal benefit cannot be treated as a payment of the balance due upon the decree, after giving credit for the money paid, because the decree belonged to Lockhart as executor, and not in his own right; and although he had a legal title to, and the right to control it for lawful purposes, he had no authority to use it, or the money due upon it, to pay his own debts; on the contrary the law forbade this to be done, and in undertaking to do so, he was misapplying the assets of

the estate he had in charge, and committed a *devastavit*, for which, he and all persons knowingly taking benefit of such misapplication, were liable. It is clear that whoever knowingly accepts the assets of an estate in the hands of an executor in payment of his debt due from the executor personally, colludes with the latter in committing a *devastavit*, and he will not be allowed to keep them as against creditors, legatees, or others entitled to have them; as to these persons, the executor is a trustee, and he and those dealing with him in respect to such assets are held to the utmost good faith.

In *Grant* v. *Bell*, 87 N. C., 34, the court said: "The fact that payment was thus made, either in whole or in part, by the surrender of debts on the executor, is nowhere denied in the answer. On the contrary, it seems to have been conceded throughout the whole case, and was proved by the defendant's own witness and counsel." We see no reason to modify this view of the matter; on the contrary, the evidence taken and reported goes strongly to strengthen and confirm it. The nature of the whole transaction—the declarations of the defendant testified to—the fact that his counsel superintended the settlement—the fact that it is nowhere denied in the answer although charged in the complaint—indeed all the facts and circumstances go to show and satisfy us that the defendant knew of the misapplication of the assets, and that he intended to have the executor use the decree and the money due upon the same in discharging two large debts due from him personally to the defendant, and in part, one due from the executor to Long, to which the defendant was surety. If he believed Lockhart, as his debtor, to be solvent, and therefore, the estate might not suffer, this cannot alter the case, or modify his liability. He had no right to deal with and avail himself of the assets of the estate in Lockhart's hands as executor. He did so at his peril, and Lockhart having failed to pay the money, he must now make his failure good.

It is insisted, however, that Lockhart was only surety to the bond surrendered to him, in which he and three other persons

were obligors to the defendant, and therefore, he ought to have collected the $4,489.16, due upon it, from the principal therein, for the estate, and it was so intended.   It appears that the parties making this bond were, by its terms, all principals, but in any view, Lockhart was liable to the defendant for the whole balance of it, and the defendant sought to have him pay it with the assets of the estate.

It is said that the defendant has no control of the bond and cannot have.   That in no way concerns the estate of the plaintiff.   The defendant must look to the personal representative of Lockhart in that respect, for he dealt with the latter, not with the estate in any legal or equitable sense.

It was further insisted on the argument, that the defendant gave Lockhart *an order* for $1,101.73 on Long, and he knew nothing of the arrangement whereby the latter entered a credit on Lockhart's bond due to him, and he so swears in his deposition.   But his counsel knew of the arrangement, and from the nature of the transaction he was certainly put on notice.   In the order of business, he would know it.   It does not appear, certainly, that any order was given.   It is probable that none was given, but if it had been, the defendant well knew, so far as appears to us, that he had no cash in Long's hands to pay it.   He held Long's bond for money, and Long held Lockhart's bond for money, and the defendant was surety to that bond!   How convenient and natural the arrangements made! Such an order, as that suggested, could not be put on the footing of a check on a bank, where money is presumed to be on deposit to meet it.

So that the balance of $7,588,18, due upon the decree, so far as appears, remains unpaid, and must be paid with interest thereon, by the defendant, unless it shall appear that something was due to Lockhart from the estate of the testator, and if so, the defendant will be entitled to the benefit of that sum, whatever it may be.

It is necessary to take an account of the estate of the testator

named, only for the purpose of ascertaining what sum was due to Lockhart at the time of his death.

It is so manifest that he took but a life estate in two-thirds of all the testator's property "of every description, whether in possession or action," after the payment of debts and the costs of administration, that we do not deem it necessary to make a word of comment upon the provisions of the will relating to him. There is no word or clause in it indicating a contrary intent.

The report shows that there are debts due from the estate in the hands of the plaintiff, to sundry creditors, amounting to $1,775.17, and these are reduced to judgment. The counsel for the defendant insisted that these judgments are all under the statute presumed to be paid, are barred by the statute of limitation, and the plaintiff is not bound to pay them, and the defendant has the right to take benefit thereby. If it be granted that the judgments are barred (and as to this we express no opinion) it cannot avail the defendant, because the whole balance of the decree, subject to the deduction of what may be ascertained to be due Lockhart, is due to the plaintiff to pay, first, the costs of administration; secondly, debts due to creditors entitled to be paid, and thirdly, for the legatees. If the judgments are barred, and the plaintiff will not pay them when he shall have assets, this may swell the sum due to Lockhart in some measure, but that view of the matter is not presented now. It is sufficient to say here that the plaintiff cannot avail himself of the statute of limitations.

In view of the imperfect report before us, we deem it better to overrule and disregard all the exceptions of both parties thereto, and recommit it, with instructions to the referee to ascertain, first, the balance due upon the decree for $12,077.34, with interest thereon from the 25th of November, 1868, excluding entirely from the account the bonds so surrendered to Lockhart, the executor, and the same so credited on his bond to Long; and secondly, to ascertain what sum of money was due to Lockhart at the time of his death, under the will of the testator. In

ascertaining the amount due to Lockhart, the referee will take into his account all debts and costs of administration properly paid by him, the costs of administration and all debts unpaid.

Let a proper order, recommitting the report in accordance with opinion, be drawn.

Judgment accordingly.