FLORENCE L. KEARNES v. R. W. GRAY, EXECUTOR.

(Filed 23 May, 1917.)

### 1. Wills—Annuities—Rents and Profits—Pleadings—Demurrer.

Where in an action against an executor to recover the difference between the amount allowed by the will for plaintiff's support and the amount received, it is alleged that the plaintiff and her mother, during the latter's lifetime, under the terms of the will, were to receive a certain monthly amount, each, out of the rents and profits of the estate, and in the event of sickness or unforeseen circumstances the executor may allow more; and that the rents and profits had been exhausted in the mother's lifetime, the annuity was not a charge upon the corpus of the estate, and without allegation that the unforeseen circumstances had arisen or demand in this respect made upon the executor in the mother's lifetime, a demurrer should have been sustained.

### 2. Pleadings—Demurrer—Judgment—Appeal and Error—Statutes.

Upon overruling a demurrer to the complaint, the defendant should be permitted to answer over. Revisal, sec. 506.

APPEAL by defendant from *Long, J.,* at August Term, 1916, of GUILFORD.

*King & Kimball for plaintiff.*
*A. Wayland Cooke and Clifford Frazier for defendant.*

CLARK, C. J. This is an appeal from a refusal to sustain the defendant's demurrer to the complaint.

The complaint sets out as the basis of the action item 6 of the will as follows: "My executors hereinafter named shall *out of the rents and profits or income of my estate* pay to my wife, Nannie L. Gray, twenty-five dollars ($25) per month, and to my daughter, Florence I. Kearnes, twenty-five dollars ($25) per month, during the lifetime of my said wife; and it is my desire that they bear the expense of their support equally. However, in the event of sickness or unforeseen circumstances, if their necessities are greater, my executors may allow them or either of them a larger portion."

It is further alleged in the complaint, and is admitted by the demurrer, that the plaintiff, the daughter of the testator, lived with the widow of the testator from his death, 9 December 1908, to the death of the widow, 21 February, 1916, and that the executor paid her the sum of $965.50; but the plaintiff claims that the full amount of $25 per month would amount to $2,133, and this action is brought for the difference. The plaintiff further avers that according to her information, "The

rents collected from the property were about equal to and were exhausted by the amounts paid to the widow of the testator and the plaintiff under item 6."

The question presented, therefore, is whether under the provisions of section 6 of the will, the executors being restricted to payment of the annuity to the widow and daughter "out of the rents and profits or income of the estate," and it being admitted in the complaint that such source was exhausted by the payments made to the plaintiff and widow, whether the deficit can now be charged against the other funds or realty of the estate.

It is not alleged in the complaint that the sum paid the plaintiff was insufficient nor that the plaintiff made any application to the executor for further allowance till after the death of the mother, at which time the annuity expired, and when she would receive her share of the estate together with the other children of the testator.

The will evidently intended that the corpus of the estate was to remain intact and should not be chargeable for any arrearges of annuity. There was discretion vested in the executors only "in the event of sickness or unforeseen circumstances," if their necessities are greater, "in which case the executors might allow the widow or daughter or either of them a larger portion." The application upon that ground was one largely addressed to the discretion of the executors, and should have been made during the period limited for the annuity.

*Mitchener v. Atkinson,* 62 N. C., 23 ; *S. c.,* 63 N. C., 585, is not in point for there was a devise absolutely of $20,000 to the widow, and the subsequent provision to pay a part of this sum out of the proceeds arising from the sale of the produce of the farm was not restricted, as here, to that as the source from which the annuity should be derived, but was held to be merely the indication of the primary source from which it is to be derived. The same is true of the other authorities cited by the plaintiff, which were all cases where the testator, as clearly appeared from the will, intended to make the annuity an absolute charge upon the corpus of the estate, and the designation of a fund was only incidental. This appears from the citation made by the plaintiff from 2 Underhill on Wills, sec. 768, p. 1088 : "Where the testator gives an annuity, and it clearly appears that it was his desire and intention to make a *definite and certain provision for the support of the annuitant, an annuity is an absolute charge upon the corpus of the estate.* In such case its payment does not depend upon the amount of the income exclusively, though the testator may have given directions for investing the property and may have alluded to its payment out of the income thus produced."

To the same effect is the citation made by the plaintiff from Underhill on Wills, p. 566: "And if the will shows that the testator intends the legacy *to be paid at all events,* though a particular fund is provided for its payment it is a demonstrative legacy, and will be paid with the general legacies, where the particular fund has failed."

In this case the testator strictly restricted the source from which the annuity should be derived, and being aware that in case of sickness or unforseen circumstances it might not prove sufficient, he gave authority to the executor to exceed the sum allowed, which would authorize the executors to take the amount from other sources. But such application was not made and the contingency on which the executors could exercise such discretion is not alleged by the complaint to have occurred.

In 3 A. and E. (2 Ed.), 1143, it is said: "Where a sum of money is set apart the annuity to be paid out of the dividends therefrom with a gift over of the capital sum, the *corpus* is not liable for the arrears. If it clearly appears that the annuity is to be paid only from a yearly gift of the income of an invested fund, the corpus will not be liable."

In *Brown v. Cresap* (W. Va.), 9 L. R. A. (N. S.), 997, it was held: "Where a testator charges the estate with the maintenance and support of his widow during her life, the amount set apart each year for such purpose did not constitute a debt against the estate which could be allowed to accumulate and be passed by the widow to her devisee or personal representative, her right to such sum depending on her using it for the purpose of maintenance and support for which it was bequeathed."

In *DeHaven v. Sherman,* 6 L. R. A., 745, the testator devised certain property to a trustee to be leased and put in repair, and out of the rents he was to pay interest, insurance, etc. The residue of the *rents and profits* were to be paid $6,000 per annum in monthly installments to testator's widow, if living, and $3,000 per annum in monthly installments to each of his three children or the heirs of their body, and the excess to be applied on the indebtedness. This was held not a bequest of the rents themselves, but only an annuity; that the legatee acquired no interest in the particular real estate, and that there was no rent charge. "It could not be intended that the payment of these annuities are a charge against the corpus of the estate."

The demurrer on the ground that the complaint does not state a cause of action should have been sustained.

It was error, also, for the court on overruling the demurrer to render judgment against the defendant. He had the right to answer over. Revisal, 506; *Parker v. R. R.,* 150 N. C., 433; *Morgan v. Harris,* 141 N. C., 360.

Reversed.